Jonathan Shub (CA Bar No. 237708)
Kevin Laukaitis
**SHUB LAW FIRM LLC**
134 134 Kings Hwy E Fl 2
Haddonfield, NJ 08033
Tel: 856-772-7200
jshub@shublawyers.com
klaukaitis@shublawyers.com

*Attorneys for Plaintiff and the Proposed Class*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Mohammed Javed, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>Fairlife LLC,<br><br>Defendant | Case No.<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff, by attorneys, alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     Fairlife LLC ("defendant"), manufactures, distributes, markets, labels and sells high protein milk beverages under its Core Power Elite brand, purporting to be flavored by the natural flavor of vanilla, natural flavors and not artificial or synthetic flavors ("Product").

2.     The relevant front label representations include (1) "Vanilla [–] Natural Flavors," (2) "Core Power," (3) "High Protein Milk Shake," (4) "Elite" and (5) pictures of cured vanilla beans and vanilla flowers wrapping around the base of the Product.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



3.      A close-up shows "Vanilla" is larger than almost every other statement on the front label, and the vanilla beans and vanilla flower occupy the entire lower half of the label.



2

1  **I.      NATURAL FLAVOR OF VANILLA**

2          4.      Natural vanilla flavor starts with the vanilla orchid, grown in tropical climates such

3  as Madagascar.



5          5.      The vanilla flower produces green vanilla beans.



6          6.      The beans develop their unique flavor from being cured in the tropical sun.



**CLASS ACTION COMPLAINT**

7.     The flavoring principles of vanilla beans are removed through immersion in alcohol.

Beginning                    Middle                         End



8.     The color of the alcohol gradually changes to reflect the release of the millions of black seeds inside the vanilla beans, which contain the flavoring compounds.



9.     While vanillin (3-methoxy-4-hydroxybenzaldehyde) is the major component of natural vanilla flavor, it only contributes about one-third of its flavor and aroma.

**CLASS ACTION COMPLAINT**

10.    The bulk of natural vanilla's flavor is from more than two hundred odor-active compounds, including acids, ethers, alcohols, acetals, heterocyclics, phenolics, esters and carbonyls.

11.    These non-vanillin compounds are essential to what consumers expect from natural vanilla.

12.    Methyl cinnamate and cinnamyl alcohol provide a cinnamon and creamy note.

13.    Acetovanillone provides a sweet, honey taste.

14.    P-hydroxybenzoic acid and vanillic acid are significant phenolic compounds which contribute to vanilla's aroma.

15.    4-methoxybenzaldehyde (p-anisaldehyde) and 4-methoxybenzyl alcohol (p-anisyl alcohol) provide creamy and floral notes.

## II.    CONSUMERS SEEK NATURAL FLAVORS

16.    Demand for natural vanilla has been steadily increasing due to consumer demand for natural flavor ingredients.

17.    The chemical production of vanillin in the late 19th century resulted in foods purporting to contain natural vanilla, but that contained no vanilla or a trace amount, boosted by low cost, synthetic vanillin.

18.    The front label emphasizes the Product's "natural" attributes through the statements, "Vanilla [–] Natural Flavors," and pictures of vanilla beans and vanilla flower (the "Natural Representations").

19.    The word "Vanilla" is larger than what the Product is, a "High Protein Milk Shake."

20.    The Food and Drug Administration ("FDA") defines a natural flavor as one made from a natural source and through a natural process. 21 C.F.R. § 101.22(a)(3).

21.    Artificial flavors are made from an artificial source or through a non-natural process. 21 C.F.R. § 101.22(a)(1).

22.    Seventy percent of consumers avoid artificial flavors, because they are linked to detrimental health and nutrition, and negative environmental effects.

23.     Consumers have become increasingly concerned about effects of synthetic and chemical flavors and ingredients in foods.[1]

24.     Consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients.

25.     In 2015, sales of natural products grew 9.5% to $180 billion.[2]

26.     Reasonable consumers, including Plaintiff and Class Members, value natural flavors and natural products for reasons including the belief that they are safer and healthier than alternative products not represented as natural.

27.     Federal agencies have issued guidance on the term "natural" so that companies will not use this term to mislead consumers.

28.     The FDA defines "natural" to mean nothing artificial or synthetic has been included in or added to a food that is not expected.

29.     The Federal Trade Commission ("FTC") advises that companies must anticipate how reasonable consumers will understand the word "natural."

30.     If "reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact."[3]

---

[1] Julianna M. Butler & Christian A. Vossler, *What is an Unregulated and Potentially Misleading Label Worth? The case of "Natural"-Labelled Groceries*, Environmental & Resource Economics, Springer; European Association of Environmental and Resource Economists, vol. 70(2), pages 545-564 (2017). "Thus, one finding is that most people – 87% of our sample – do appear to attribute meaning to "natural" labelling. The vast majority of respondents stated a belief that "natural" signals no artificial flavors, colors and/or preservatives." *Id.*

[2] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ*, FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6 ; *see also* Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025).

[3] 75 Fed. Reg. 63552, 63586 (Oct. 15, 2010).

**CLASS ACTION COMPLAINT**

31.     Surveys show that "[e]ighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial [or synthetic] ingredients" and flavor.[4]

32.     Another recent study showed that, "The vast majority of respondents stated a belief that 'natural' signals no artificial flavors, colors and/or preservatives."[5]

33.     Surveys and other market research, including expert testimony, will demonstrate that use of the term "natural flavors" to describe the Product's flavoring is false and misleading.

34.     In the context of high protein drinks which only discloses "Vanilla – Natural Flavors," reasonable consumers will not expect artificial or synthetic flavor ingredients.

35.     Consumers at the point-of-sale are unable to verify whether a product is flavored exclusively or predominantly from natural vanilla flavor.

III.    **CONSUMERS ARE ACCUSTOMED TO TRUTHFUL LABELING**

36.     Consumers are accustomed to truthful labeling which tells them the source of a product's flavor – the named ingredient, natural sources other than the named ingredient, or artificial sources.

37.     California's Sherman Law and the Food and Drug Administration ("FDA") have identical requirements for disclosing whether a product's taste is from vanilla beans or from non-vanilla, synthetic sources. *See* 21 C.F.R. § 101.22(i).

---

[4] Urvashi Rangan, Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 C.F.R. Part 260, Notice of the Federal Trade Commission (2010) and on FTC website, Comment 58.

[5] Julianna M. Butler & Christian A. Vossler, *What is an Unregulated and Potentially Misleading Label Worth? The case of "Natural"-Labelled Groceries*, Environmental & Resource Economics, Springer; European Association of Environmental and Resource Economists, vol. 70(2), pages 545-564 (2017).

**CLASS ACTION COMPLAINT**

38.    Competitor dairy and dairy-alternative protein drinks, like Vanilla Crème Genuine Muscle Milk and Vanilla Gatorade Recover, have pictures of natural vanilla beans and vanilla flowers, but are truthfully labeled as "Artificially Flavored." *See* 21 C.F.R. § 101.22(i)(2).



39.    Other truthfully labeled competitor products include the Vanilla Bean GNC Lean Shake and Intense Vanilla Pro Series Muscle Milk, with pictures of natural vanilla, but which disclose they are "Artificially Flavored."

 

40.    The Core Elite Vanilla is over sixty-percent more expensive than these competitor products even though both contain artificial flavor and little, if any, natural vanilla.

|  | $ | OZ | $/OZ |
|---|---|---|---|
| Artificially Flavored | 2.49 | 14 | 0.177857143 |
| Core Elite | 3.29 | 11.5 | 0.286086957 |

**IV.    THE    "NATURAL    FLAVOR"    REPRESENTATIONS    ARE    FALSE    AND    MISLEADING**

41.    Consumers who view the front label will expect that the predominant or exclusive source of the Product's vanilla taste will be the natural flavor of vanilla.

42.    The vanilla images wrap around the base of the Product, so consumers see it from all angles and rotations.





43.    The front label states "Vanilla [–] Natural Flavors" with pictures of natural vanilla beans and vanilla flowers, always visible to consumers.



44.    Should consumers scrutinize the ingredient list, they will not see "vanilla extract" but only see "NATURAL FLAVORS."



**INGREDIENTS:** FILTERED LOWFAT GRADE A MILK, CONTAINS LESS THAN 1% OF NATURAL FLAVORS, LACTASE ENZYME, ACESULFAME POTASSIUM, CARRAGEENAN, MONK FRUIT JUICE CONCENTRATE,  MALTODEXTRIN, SEA SALT, CELLULOSE GEL, CELLULOSE GUM, STEVIA LEAF EXTRACT, SUCRALOSE, VITAMIN A PALMITATE, VITAMIN D3.

45.    Despite the promises that the Product's vanilla taste is exclusively or predominantly from the natural flavor of vanilla or even natural flavors other than vanilla, the Product contains no appreciable or detectable amount of vanilla and is flavored almost exclusively by artificial flavor.

46.     That the "Natural Flavors" consists of little, if any of the natural vanilla flavor depicted on the label, is based on several facts.

47.     First, according to Scott Rankin, a professor of dairy foods at the University of Wisconsin-Madison, "the different wordings on the labels amount to an industry shorthand for specific kinds of natural or artificial flavorings."

48.     For instance, "Natural flavor…(with no mention of vanilla at all) indicates just a trace of natural vanilla (there's no required level) and other flavorings such as nutmeg that merely trigger an association" with vanilla.

49.     Consumers are not told the "Natural Flavors" *may* contain a *de minimis* or negligible amount of natural vanilla, and that the Product's vanilla taste is mostly from artificial flavor.

50.     While this may be known to food labeling experts such as Dr. Rankin, it is not known to reasonable consumers, including Plaintiff.

51.     Second, analytical testing of the Product in 2020 and 2021 confirmed that the Product's "vanilla" taste is not from natural vanilla flavor or non-vanilla natural flavors, but artificial flavor.

52.     In isolating key natural vanilla compounds, the amount of vanillin was disproportionately greater than if it was present only from the natural flavor of vanilla.

53.     The vanillin was unaccompanied by expected amounts of key aromatic compounds – methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, vanillic acid, 4-methoxybenzaldehyde (p-anisaldehyde) and/or 4-methoxybenzyl alcohol (p-anisyl alcohol).

54.     Third, guaiacol was detected at atypically elevated levels, not explained by relation to any other compounds.

55.     Guaiacol is the source of 85% of artificial vanillin, and its detection indicates that it is the source of the "vanilla" taste.

56.     Guaiacol is a petrochemical precursor, obtained from synthetic benzene and propylene, whose industrial source is petroleum.

57.     Guaiacol is converted to vanillin through chemical reactions, condensation with glyoxylic acid, decarboxylation and the use of chemical catalysts, including sodium hydroxide and sodium chloride.

58.     The detection of guaiacol is considered a "fingerprint" of artificial vanilla.[6]

59.     Vanillin made from guaiacol is an artificial flavor because guaiacol is an artificial source, and it is made through non-natural processes. *See* 21 C.F.R. § 101.22(a)(1).

60.     The ingredient list is misleading, because Defendant is required to identify this flavoring by its specific name, "vanillin" or "artificial flavor."

61.     The Product contains other artificial flavors, such as piperonal (heliotropine). *See* 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").

62.     Piperonal is not found in vanilla and is used to contribute a "powdery" note.

63.     While piperonal can be from a natural source, the piperonal detected in the Product is from an artificial source, because it was detected at levels several times higher than if a natural source was used.

64.     Artificial piperonal is made from benzene, a byproduct of petroleum processing, and a highly toxic carcinogen that causes leukemia.

**V.     THE "NATURAL FLAVORS" REPRESENTATIONS ARE MISLEADING**

65.     Consumers are not expected or required to scour the ingredient list on the back of the Product to confirm or debunk prominent front label claims.

66.     Even if a reasonable consumer did review the ingredient list, they would not know that the "Natural Flavors" includes artificial flavor from synthetic sources.

67.     Even if Defendant claimed that its "natural flavors" contains vanillin from a non-synthetic, non-vanilla source, the labeling would still be misleading, because the only natural vanillin is from vanilla beans.

---

[6] A.G. Huesgen, Analysis of natural and artificial vanilla preparations, Agilent Technologies, Inc.

68.     In recent correspondence with vanilla suppliers, the FDA has emphasized that "'natural flavor' must not be used in such a way to imply that it is a 'natural vanilla flavor', because it is not derived from vanilla beans. *See* Letter from Margaret-Hanna Emerick, FDA, to Richard Brownell, February 25, 2016.

69.     According to the FDA, where a food's characterizing flavor is vanilla and "the flavoring was not derived from vanilla…[it] must be identified as 'artificially flavored.'" *Id.*

70.     By placing the term "Natural Flavors" directly below "Vanilla," consumers will expect most, or all the flavoring to be from the natural flavor of vanilla and not artificial flavor.

71.     Although the flavoring used to simulate the Product's characterizing vanilla flavor is (1) not from vanilla beans, (2) from an artificial petrochemical source and (3) made through an artificial process, Defendant pretends otherwise, conflating natural and artificial flavoring, and deceiving consumers.

72.     Because the Product contains artificial flavor that "simulates, resembles or reinforces the characterizing flavor," the front label is required to state, "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

73.     Defendant fails to disclose the addition of the synthetic flavoring ingredients.

74.     Defendant knows consumers will pay more for the Product because it contains pictures of vanilla, "Vanilla – Natural Flavors," and omits that it is artificially flavored.

75.     The Product lacks an authentic vanilla taste because of the absence of the critical odor-active compounds in vanilla.

76.     The added vanillin (from an *artificial* source) gives the Product a "sweet, creamy" taste, which is distinct from the multifaceted taste of natural vanilla beans.

77.     The addition of natural vanilla to the Product in place of artificial flavor would cost approximately $ 0.05 per 11 oz, which is not a significant cost increase.

78.     There is nothing economically prohibitive about including a non-de minimis amount of natural vanilla flavor in the Product.

**CLASS ACTION COMPLAINT**

## VI.   RELIANCE AND ECONOMIC INJURY

79.     Plaintiff sought to purchase a product with a materially greater amount of natural vanilla flavor from vanilla beans than was present.

80.     Plaintiff sought to purchase a product with without synthetic and artificial flavor ingredients and expected that most or all the flavor would be from natural vanilla.

81.     Plaintiff did not expect the Product's vanilla taste to be provided mostly, or all, by artificial flavoring from artificial sources.

82.     Plaintiff saw and relied on the label's advertising, which misleadingly reference only natural vanilla flavor even though the Product contained a negligible amount of this ingredient.

83.     Plaintiff would not have purchased the Product if he knew the representations were false and misleading.

84.     The Product costs more than similar products without misleading representations and but for the misleading representations, would have cost less.

85.     Plaintiff paid more for the Product than she otherwise would have, and would only have been willing to pay less, or unwilling to purchase it at all, absent the misleading representations.

86.     As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $3.29 per 11.5 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

### INTRADISTRICT ASSIGNMENT

87.     Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events giving rise to the claims arose in Alameda County, and this action should be assigned to the Oakland or San Francisco Division.

### PARTIES

88.     Plaintiff is a resident of Hayward, Alameda County, California.

89.     During the relevant statutes of limitations for each cause of action, including numerous times between 2020 and March 2021, Plaintiff purchased the Product within this district for personal and household consumption and use, in reliance on the representations the Product was flavored mainly by natural vanilla flavor, natural flavors and did not contain artificial, synthetic flavoring.

90.     Plaintiff purchased the Product at stores including 7-Eleven, 26965 Industrial Boulevard, Hayward, CA 94545

91.     Plaintiff tries to consume foods with natural ingredients and natural flavors, and avoid synthetic and artificial flavor ingredients, as much as possible.

92.     Plaintiff expected that most or all the flavoring would be from the natural flavor of vanilla and not synthetic flavoring ingredients, because that is what the label said and implied.

93.     Plaintiff expected more than a vanilla taste, but natural vanilla from vanilla beans.

94.     Plaintiff would buy the Product again if assured it was flavored mainly by natural vanilla instead of synthetic flavoring.

95.     Defendant Fairlife LLC is a Delaware corporation with a principal place of business in Chicago, Illinois.

96.     Fairlife is one of the nation's largest dairy producers, with a reputation of high-quality and sustainable production of milk-based beverages.

97.     Fairlife's products are made through a "proprietary milk filtering process that allows you to increase protein by 50 percent, take sugar down by 30 percent, and have no lactose."[7]

98.     The result is that Fairlife's milk products are "roughly twice as high as conventional milk; Fairlife's national average price in the US is $4.29 per 52 oz., compared to the national average pricing of conventional milk at $2 per 64 oz."[8]

---

[7] Wikipedia contributors, Fairlife, *Wikipedia, The Free Encyclopedia*.
[8] *Id.*

**CLASS ACTION COMPLAINT**

99.     The side panel of the Product confirms consumers are buying a premium product.

What makes Core Power one-of-a-kind is pure, fresh fairlife ultra-filtered milk.
With high quality complete protein and all 9 essential amino acids, Core Power helps build lean muscle and supports healthy workout recovery.



100.     The Product is available to consumers from stores throughout California, including gas stations, drug stores, grocery stores, big box stores, convenience stores, specialty grocery stores and online, sold individually in bottles of 11.5 OZ or multipacks.

## JURISDICTION AND VENUE

101.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

102.     Plaintiff is a citizen of Hayward, Alameda County, California.

103.     Defendant is a Delaware limited liability company with a principal place of business in Chicago, Cook County, Illinois and is a citizen of Illinois.

104.     Upon information and belief, at least one of defendant's members is not a citizen of California.

105.     Diversity exists because plaintiff and defendant have citizenship of different states.

106.     Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

107.     Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – the purchases of Plaintiff and his awareness of the representations and omissions identified here.

**CLASS ACTION COMPLAINT**

108.    This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within California.

## CLASS ACTION ALLEGATIONS

109.    Plaintiff brings this action pursuant to Fed. R. Civ. P. Rule 23(a), (b)(2) and (b)(3).

110.    Plaintiff seeks to represent all persons residing in California who purchased the Product for personal or household consumption and use since May 29, 2015 ("Class" or "the California Class").

111.    The Class consists of thousands of persons, and joinder is impracticable.

112.    Common questions of law or fact predominate and include whether defendant's representations and omissions were and are misleading and if plaintiff and class members are entitled to injunctive relief and damages.

113.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and omissions.

114.    Plaintiff is an adequate representative because his interests do not conflict with other members.

115.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

116.    A class action is superior to other available methods for adjudication of this controversy, since individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

117.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

118.    Plaintiff seeks certification of a class for injunctive relief under Rule 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Class.

119.    Plaintiff seeks certification of a class under Rule 23(b)(3) because common issues predominate over questions affecting individual members and Defendant has acted or refused to act on grounds that apply generally to the Class.

120.    Plaintiff anticipates that this Court can direct notice to the Class, by publication in major media outlets and the Internet.

**FIRST CLAIM**
**(CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17200 *et seq.* –**
**Unlawful Conduct Prong of the UCL)**

121.    Plaintiff incorporates all preceding paragraphs.

122.    California Business & Professions Code section 17200 ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."

123.    Defendant's representations and omissions are "unlawful" because they violate the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including:

1.    21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material";

2.    21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement;

3.    21 C.F.R. § 101.18(b), which prohibits true statements about food ingredients and descriptions that are misleading in light of the presence of other ingredients;

4.    21 C.F.R. § 101.22, which provides requirements to truthfully identify and disclose the source of a food or beverage's characterizing flavor; and

5.    21 C.F.R. § 102.5, which prohibits misleading common or usual names.

124.    Defendant's conduct is "unlawful" because it violates the California False Advertising Law ("FAL") and the Consumer Legal Remedies Act ("CLRA").

125.    Defendant's conduct violates the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code section 109875, et seq. ("Sherman Law"), including:

**CLASS ACTION COMPLAINT**

1.  Section 110100 (adopting all FDA regulations as state regulations);

2.  Section 110290 ("In determining whether the labeling or advertisement of a food …
    is misleading, all representations made or suggested by statement, word, design,
    device, sound, or any combination of these, shall be taken into account.  The extent
    that the labeling or advertising fails to reveal facts concerning the food … or
    consequences of customary use of the food … shall also be considered.");

3.  Section 110390 ("It is unlawful for any person to disseminate any false advertisement
    of any food…. An advertisement is false if it is false or misleading in any
    particular.");

4.  Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or
    offer for sale any food … that is falsely advertised.");

5.  Section 110398 ("It is unlawful for any person to advertise any food, drug, device,
    or cosmetic that is adulterated or misbranded.");

6.  Section 110400 ("It is unlawful for any person to receive in commerce any food …
    that is falsely advertised or to deliver or proffer for delivery any such food…."); and

7.  Section 110660 ("Any food is misbranded if its labeling is false or misleading in any
    particular.").

126.    Each of the challenged statements made and actions taken by Defendant violates the
FFDCA, FAL, and Sherman Law, and therefore violates the "unlawful" prong of the UCL.

127.    Defendant leveraged its deception to induce Plaintiff and class members to purchase
a product that was of lesser value and quality than advertised.

128.    Defendant's deceptive advertising caused Plaintiff and class members to suffer
injury-in-fact and to lose money or property.

**CLASS ACTION COMPLAINT**

129.    Defendant's actions denied Plaintiff and class members the benefit of the bargain when they decided to purchase the Product instead of other products that are less expensive and contain virtually the same or immaterially different amounts of natural vanilla flavoring ingredients.

130.    Had Plaintiff and class members been aware of Defendant's false and misleading advertising, they would not have purchased the Product at all, or would have paid less than they did.

131.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

132.    Plaintiff seeks an order for the disgorgement and restitution of all monies from the sale of the Product that was unjustly acquired through such acts.

## SECOND CLAIM
### (ON BEHALF OF THE CALIFORNIA CLASS)
**(Violation of California Business & Professions Code §§ 17200, *et seq.* –
Unfair and Fraudulent Conduct Prong of the UCL)**

133.    Plaintiff incorporates all preceding paragraphs.

134.    California Business & Professions Code section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

135.    The false and misleading representations of the Product constitutes "unfair" business acts and practices because it is immoral, unscrupulous, and offends public policy.

136.    The gravity of the conduct outweighs any conceivable benefit.

137.    The representations and omissions constitute "fraudulent" business acts and practices because they are false and misleading to Plaintiff and class members.

138.    Defendant's representations and omissions are likely to deceive Plaintiff and Class Members about the absolute and relative amounts of vanilla and natural ingredients.

139.    Defendant knew or reasonably should have known that its statements and omissions concerning the Product were likely to deceive consumers.

140.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

141.    Plaintiff seeks an order for the disgorgement and restitution of all monies from the sale of the Product that was unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

**THIRD CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17500, *et seq.* –**
**False and Misleading Advertising)**

142.    Plaintiff incorporates all preceding paragraphs.

143.    California False Advertising Law (Cal. Business & Professions Code sections 17500 and 17508) prohibits "mak[ing] any false or misleading advertising claim."

144.    Defendant makes "false [and] misleading advertising claim[s]," by deceiving consumers as to the absolute and relative amounts of natural vanilla flavor, natural flavors and ingredients, and artificial flavors and ingredients, in the Product.

145.    In reliance on these false and misleading advertising claims, Plaintiff and class members purchased and consumed the Product without the knowledge it contained a de minimis amount of natural vanilla flavor, and a substantial amount of non-vanilla flavor ingredients, from synthetic sources.

146.    Defendant knew or should have known that its representations and omissions were likely to deceive consumers.

147.    As a result, Plaintiff and class members are entitled to injunctive and equitable relief, restitution, and an seek an order for the disgorgement of the funds by which Defendant was unjustly enriched.

## FOURTH CLAIM
### (Violation of California Civil Code §§ 1750, *et seq.* – Consumers Legal Remedies Act)

148.    Plaintiff incorporates all preceding paragraphs.

149.    The CLRA adopts a statutory scheme prohibiting deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

150.    Defendant's policies, acts, and practices were designed to, and did, result in the purchase and use of the Product primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

1.    Section 1770(a)(2), which prohibits representing that goods have a particular composition or contents that they do not have;

2.    Section 1770(a)(5), which prohibits representing that goods have characteristics, uses, benefits or ingredients that they do not have;

3.    Section 1770(a)(7), which prohibits representing that goods are of a particular standard, quality, or grade if they are of another;

4.    Section 1770(a)(9), which prohibits advertising goods with intent not to sell them as advertised; and

5.    Section 1770(a)(16), which prohibits representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

151.    Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780.

152.    If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and class members will continue to suffer harm.

**CLASS ACTION COMPLAINT**

153.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff will send a CLRA Notice to Defendant concurrently with the filing of this action or shortly thereafter, which details the violations of the CLRA, demands correction of these violations, and provides the opportunity to correct these business practices.

154.    If Defendant does not correct its business practices, Plaintiff will amend or seek leave to amend the complaint to add claims for monetary relief, including restitution and actual damages under the CLRA.

155.    Plaintiff will seek injunctive relief, restitution and damages for Defendant's violation of the CLRA.

## FIFTH CLAIM
### Unjust Enrichment

156.    Plaintiff incorporates all preceding paragraphs.

157.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## JURY DEMAND AND PRAYER FOR RELIEF

Plaintiff demands a jury trial on all causes of action so triable.

WHEREFORE, Plaintiff, on behalf of herself and members of the proposed class, prays for judgment and relief on all of the legal claims as follows:

A.    Certification of the Class, certifying Plaintiff as representative of the Class, and designating Plaintiff's counsel as counsel for the Class;

B.    A declaration that Defendant has committed the violations alleged herein;

C.    For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and Cal Civ. Code § 1780, except for monetary damages under the CLRA;

D.    For declaratory and injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq*. and 17500, *et seq.*;

E.    For damages, declaratory and injunctive relief pursuant to California Civil Code § 1780, except for monetary damages under the CLRA;

24

F.    An award of compensatory damages, the amount of which is to be determined at trial, except for monetary damages under the CLRA;

G.    For punitive damages;

H.    For interest at the legal rate on the foregoing sums;

I.    For attorneys' fees;

J.    For costs of suit incurred; and

K.    For such further relief as this Court may deem just and proper.

Dated:    June 2, 2021                                Respectfully submitted,

/s/ Jonathan Shub
SHUB LAW FIRM LLC
Kevin Laukaitis*
134 Kings Hwy E Fl 2
Haddonfield, NJ 08033
T: (856) 772-7200
jshub@shublawyers.com
klaukaitis@shublawyers.com

SHEEHAN & ASSOCIATES, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 409
Great Neck, NY 11021
T: (516) 268-7080
spencer@spencersheehan.com

*Pro Hac Vice Granted, Pending or Forthcoming

**CLASS ACTION COMPLAINT**